# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARBONITE, INC., <br><br> Plaintiff, <br> v. <br><br> DEEPAK MOHAN, <br><br> Defendant. | Civil Action No. 18-12331 |

## COMPLAINT

This case involves Deepak Mohan, a former highly-compensated, senior executive for Carbonite, Inc. ("Carbonite"), who, despite multiple reminders regarding his restrictive covenants with Carbonite, accepted a position with a direct competitor, Veritas Technologies LLC ("Veritas") in violation of his Carbonite employment agreement. In his role at Carbonite, Mohan was repeatedly and extensively exposed to Carbonite's trade secrets and confidential information and played an integral role in overseeing products and developing strategies for Carbonite to compete in the marketplace. Mohan was also an integral member of the senior team that reviewed and assessed Carbonite's highly-confidential mergers and acquisitions strategy. Given the extent of his exposure to this information at Carbonite and the fact that his new employer is a direct competitor, Mohan's work for Veritas constitutes an immediate threat to Carbonite, because he cannot help but use the trade secret and confidential information that he learned from his role with Carbonite to assist Veritas in unfairly competing against Carbonite.

## PARTIES

1. Carbonite, Inc., is a Delaware corporation with a principal place of business at 2 Ave de Lafayette, Boston, Massachusetts.

2. Deepak Mohan is a natural person who, upon information and belief, is a citizen of Heathrow, Florida.

## JURISDICTION AND VENUE

3. Subject matter jurisdiction exists pursuant to 28 U.S.C § 1332 in that there is complete diversity of citizenship between the Plaintiff and the Defendant and the amount in controversy exceeds $75,000, exclusive of interest.

4. Venue is proper, as Carbonite, Inc., has a principal place of business in Massachusetts and the parties have an express agreement between them selecting the courts of Massachusetts as the exclusive forum for disputes.

## FACTUAL BACKGROUND

### Mohan's Employment with Carbonite

5. Carbonite provides a robust Data Protection Platform for businesses, including backup, disaster recovery, high availability, and workload migration technology. The Carbonite Data Protection Platform supports global businesses with secure cloud infrastructure.

6. Mohan began his employment with Carbonite in February 2017 as Senior Vice President, Products and Engineering. In this role, Mohan reported directly to Carbonite's Chief Executive Officer.

7. During his time at Carbonite, Mohan managed product management and engineering functions globally and had direct responsibility for steering the business data protection platform product strategy and execution.

8. Mohan's engagement with Carbonite's business strategy focusing on enterprise-level customers was extensive: In just the past several months, an internal strategy team comprised of some employees who reported directly to Mohan, focused exclusively on evolving

business plans to serve new enterprise customers.  Further, Mohan advised on the creation of an internal, confidential cross-functional matrix outlining the requirements for Carbonite to successfully serve its growing base of enterprise customers.  This strategy group reported out to Carbonite's senior management at regular meetings.

<u>CARBONITE SAFEGUARDS ITS TRADE SECRETS AND CONFIDENTIAL INFORMATION</u>

9. In order to fulfill the obligations of his role as Senior Vice President, Products and Engineering, Mohan was given access to Carbonite's trade secrets and other confidential information concerning, among other things, information about previous, current and/or contemplated products and services, know-how, techniques, computer software designs, and hardware configurations, training materials, policies and procedures, and research products, sales information and data, pricing, financial models, business plans, corporate strategy, financial and business forecasts and estimates, account valuation and information about costs and profits, and information about current and/or prospective customers of Carbonite (the "Confidential Information").

10. Mohan has intimate knowledge of Carbonite's highly-confidential mergers and acquisition ("M&A") strategy:  He was a key participant at Carbonite's regular M&A strategy meetings, developing and opining on potential targets, product and market fit analysis and integration plans.  Specifically, Mohan was involved in architecting M&A deals that are now in motion, and—significantly—because of his work for Carbonite, he knows about deals that would be of interest to Veritas.

11. Carbonite's Confidential Information provides Carbonite with a significant competitive advantage and, as a consequence, is safeguarded in several ways, including with password protection and robust information security operations.

12. In addition, Carbonite requires employees who will have access to its Confidential Information to sign certain restrictive covenants as a prerequisite for employment.

13. On February 20, 2017, Mohan executed an "Acknowledgment of Codes, Policies and Procedures," referencing, *inter alia*, Carbonite's Code of Business Conduct and Ethics.

14. According to Carbonite's Code of Business Conduct and Ethics, which expressly applies to "all officers, employees and directors of Carbonite," Carbonite's Confidential Information is to be handled as follows:

> During and after engagement with or by the Company, Employees and directors of the Company shall safeguard all confidential information of the Company or third-parties with which the Company conducts business, except where disclosure of such confidential information is authorized by the Company or is legally mandated. Confidential information includes all non- public confidential and/or proprietary knowledge, data or information concerning the business, business relationships and financial affairs of the Company whether or not in writing and whether or not labeled or identified as confidential or proprietary and all similar information pertaining to third-parties with which the Company conducts business.

15. Carbonite has myriad additional internal policies concerning the protection of its Confidential Information (including policies titled "Password Policy" and "Access Control Policy"), and it regularly trains and reminds its employees of its policies in this regard.

<u>MOHAN'S RESTRICTIVE COVENANTS</u>

16. As a condition of his employment with Carbonite, and in consideration of, among other things, receiving a compensation package totaling over one million dollars, Mohan signed the Confidentiality, Invention Assignment and Non-Competition Agreement (the "Employment Agreement"), a copy of which is attached hereto as <u>Exhibit 1</u>.

17. Among other things, Mohan agreed in § 1.2 of the Employment Agreement that he would hold Carbonite's Confidential Information in strict confidence and use it solely and

exclusively to perform his job for the benefit of Carbonite and its current and prospective customers.

18. In § 3.1 (b) of the Employment Agreement, Mohan agreed that he would not solicit any of Carbonite's existing or prospective clients, customers, or accounts.

19. In § 3.1 (c) of the Employment Agreement, Mohan agreed that, during his employment and for a period of one year after the employment is terminated for any reason, he would not "directly or indirectly . . . engage … in any business activity which competes with any business then being conducted by Carbonite, or any business proposed to be conducted by Carbonite at the time of the termination of your employment with Carbonite…."

20. In § 3.3 of the Employment Agreement, Mohan agreed that a breach of the above obligations to Carbonite (among others) would cause substantial and irrevocable damage and therefore, in the event of any such breach, in addition to other remedies which may be available, Carbonite has the right to seek specific performance and injunctive relief.

MOHAN'S RESIGNATION FROM CARBONITE

21. On September 26, 2018, Mohan requested a one-on-one meeting with the Chief Executive Officer of Carbonite (the "Carbonite CEO"). At this meeting, Mohan informed the Carbonite CEO that he had recently received an offer letter from Veritas. The Carbonite CEO made it clear to Mohan at this meeting that Veritas was a direct competitor to Carbonite and therefore covered under the restrictive covenants contained in Mohan's Employment Agreement.

22. On October 1, 2018, the Carbonite CEO met with Mohan again to discuss his offer of employment with Veritas. The Carbonite CEO offered to allow Mohan to work for Carbonite in California in order to address any personal needs to geographically relocate. This

offer was reiterated in a meeting on October 4, 2018.  At both meetings, the Carbonite CEO again reminded Mohan that Veritas is a direct competitor to Carbonite.

23. On October 15, 2018, Mohan sent his resignation letter to the Carbonite CEO via email.  A copy of the resignation letter is attached hereto as Exhibit 2.

24. On October 26, 2018, during an exit interview with Carbonite, Mohan was again reminded of his obligations under his Employment Agreement, and he executed a certification stating that he would continue to comply with all of the terms of the Employment Agreement.  A copy of the Certification Upon Termination is attached hereto as Exhibit 3.

25. On October 26, 2018, Carbonite delivered a demand letter to Mohan explaining that his work for Carbonite's direct competitor, Veritas, would violate his Employment Agreement.  A copy of Carbonite's October 26, 2018, letter is attached hereto as Exhibit 4.

26. On October 29, 2018, an attorney representing both Veritas and Mohan replied to Carbonite's demand letter with correspondence that admitted Mohan was going to start working for Veritas, but generally denied that his employment there would constitute a violation of his Employment Agreement.  A copy of Mohan's October 29, 2018 letter is attached hereto as Exhibit 5.

## MOHAN'S NEW ROLE WITH VERITAS

27. Veritas is a direct competitor to Carbonite, offering data protection solutions for many of the same business customers targeted by Carbonite.

28. Upon information and belief, Mohan's new position at Veritas, much like his former role with Carbonite, will entail oversight of Veritas' data protection platform, a directly competitive suite of data protection solutions.

29. Despite repeated warnings from the Carbonite CEO that accepting the role with Veritas would be a violation of his obligation to Carbonite, Mohan accepted the role with Veritas in breach of his obligations under Section 3.1(c) of his Employment Agreement.

## HARM TO CARBONITE

30. Carbonite will be harmed both irreparably and monetarily if Mohan works for Veritas.

31. Due to Mohan's extensive and repeated exposure to Carbonite's trade secrets and Confidential Information, and given the similarities between Mohan's roles at Carbonite and Veritas (two directly competing companies), Mohan cannot possibly avoid use of Carbonite's trade secrets and Confidential Information in his role at Veritas, thereby irreparably harming Carbonite.

32. Given Mohan's refusal to comply with his contractual, common law, and statutory obligations, Carbonite commenced this action to protect its legitimate business interests.

## COUNT I
## BREACH OF CONTRACT

33. Carbonite repeats and incorporates herein by reference the allegations set forth in each of the foregoing paragraphs.

34. On February 20, 2017, Mohan entered into the Employment Agreement.

35. The Employment Agreement was supported by valid and sufficient consideration.

36. Pursuant to the Employment Agreement, Mohan agreed that he would hold Carbonite's Confidential Information in strict confidence and use it solely and exclusively to perform his job for the benefit of Carbonite and its current and prospective customers. Employment Agreement, § 1.2.

37. Also pursuant to the Employment Agreement, Mohan agreed that, during his employment and for a period of one year following his termination, he would not "directly or indirectly . . . engage … in any business activity which competes with any business then being conducted by Carbonite, or any business proposed to be conducted by Carbonite at the time of the termination of your employment with Carbonite …." Employment Agreement, § 3.1 (c).

38. The protection of Carbonite's trade secrets and Confidential Information is a legitimate business interest that may be protected by way of a restrictive covenant agreement.

39. The restrictions contained in the Employment Agreement are reasonably necessary to protect Carbonite's legitimate business interests.

40. By accepting employment with Veritas, a direct competitor of Carbonite, in a similar role, during the restricted period, Mohan has breached the express terms of the Employment Agreement.

41. Mohan's competitive employment with Veritas jeopardizes Carbonite's trade secrets and Confidential Information.

42. Carbonite has reason to believe that Mohan will inevitably and imminently use or disclose Carbonite's trade secrets and Confidential Information in violation of his Employment Agreement.

43. After being repeatedly reminded of his obligations by Carbonite, Mohan has continued to violate his obligations under the Employment Agreement.

44. Mohan is, therefore, in breach of the Employment Agreement.

45. As a result of Mohan's breach of contract, Carbonite has suffered and will continue to suffer both irreparable harm and monetary damages in an amount to be determined at trial.

## COUNT II
### VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016 (18 U.S.C. § 1836)

46. Carbonite repeats and incorporates herein by reference the allegations set forth in each of the foregoing paragraphs.

47. In his position with Carbonite, Mohan had access to trade secrets and other nonpublic Confidential Information that is of extraordinary value to Carbonite.

48. Carbonite expended significant amounts of time and money growing its base of customers and developing its products, trade secrets, and Confidential Information, all of which is highly valuable to Carbonite and to any other person or entity that renders the same or similar services, such as Veritas.

49. Carbonite took reasonable efforts to preserve the confidentiality of this information by, among other things, requiring Mohan to enter into the Confidentiality, Invention Assignment and Non-Competition Agreement, which expressly imposes confidentiality obligations.

50. Carbonite derives an economic advantage over its competitors as a result of its trade secrets and Confidential Information.

51. Mohan has accepted a position with Veritas in violation of his Employment Agreement.

52. Mohan's position with Veritas is one in which it is not possible for Mohan not to make use of the trade secrets and Confidential Information that he learned from his role at Carbonite.

53. As a result of Mohan's misappropriation, Carbonite has suffered, and will continue to suffer, both irreparable harm and monetary damages in an amount to be proven at trial.

JURY DEMAND

Carbonite hereby demands a trial by jury on all claims and issues so triable.

PRAYER FOR RELIEF

**WHEREFORE,** for the reasons set forth above, Carbonite respectfully requests that this Court:

A. Grant temporary, preliminary, and permanent injunctive relief enjoining Mohan from working for Veritas or otherwise violating his Employment Agreement;

B. Grant temporary, preliminary, and permanent injunctive relief enjoining Mohan from using or disclosing Carbonite's trade secrets and other Confidential Information, including, without limitation, its information about previous, current and/or contemplated products and services, know-how, techniques, computer software designs, and hardware configurations, training materials, policies and procedures, and research products, sales information and data, pricing, financial models, business plans, corporate strategy, financial and business forecasts and estimates, account valuation and information about costs and profits, and information about current and/or prospective customers of Carbonite;

C. Enter judgement for Carbonite on all Counts in this Complaint, and award damages to Carbonite in an amount to be determined at trial, together with interest and costs; and

D. Award all other relief this Court determines is appropriate.

Respectfully submitted,

CARBONITE, INC.

By its attorneys,

/s/*Stephen D. Riden*
Russell Beck, BBO No. 561031
Stephen D. Riden, BBO No. 644451
Lauren C. Schaefer, BBO No. 696628
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, Massachusetts  02110
617.500.8660 Telephone
617.500.8665 Facsimile
*rbeck@beckreed.com*
*sriden@beckreed.com*
*lschaefer@beckreed.com*

Dated:  November 6, 2018